# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| PERRY J. POLSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C09-4102-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the court for judicial review of the defendant's decision denying the plaintiff's application for disability insurance ("DI") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*

On August 19, 2005, the plaintiff Perry J. Polson filed an application for DI benefits alleging he has been disabled since September 23, 2004. His application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on July 13, 2007. On September 4, 2007, the ALJ issued his decision, ruling that Polson was not disabled and therefore was not entitled to benefits. On October 23, 2009, the Appeals Council denied Polson's request for review, making the ALJ's decision the final decision of the Commissioner.

Polson filed a timely Complaint in this court seeking judicial review of the ALJ's ruling. He claims the ALJ's finding that he is not disabled is not supported by substantial evidence in the record. He asks the court to reverse the ALJ's decision and order the award of benefits.

On February 17, 2010, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The court must decide whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence based on a review of the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court will consider the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

### *Testimony at ALJ Hearing*

At the time of the hearing, Polson was 46 years old. He did not graduate from high school or obtain a GED. He last worked for Mid States Builders, a general contractor in the business of erecting commercial buildings. He was employed at Mid States for more than twenty-five years, the last twenty years as a construction foreman. On September 23, 2004, he was injured on the job after falling fourteen feet into a hole on a construction site and suffering severe injuries to his right foot, wrist, and arm. He has not returned to full-time work since the fall.

When Polson was a child, he injured his right hand and lost the use of two fingers. Also when he was young, he injured his neck. Later, he had rotator cuff injuries in both shoulders. He also had back and neck injuries, and had fusion surgery on his neck at C6-7 to treat a bulging disk. He separated his left shoulder in a bicycle accident, which causes him problems when he attempts to work above his head. He has carpal tunnel syndrome in his left hand, and sometimes he has numbness in both arms and hands.

Because he was a supervisor at Mid States, he was able to adjust his work duties over the years as he developed additional physical problems, but after the fall, his mobility was restricted to the extent he could no longer work at his job. He testified that as a result of the injuries he suffered in the fall, his doctor has restricted his standing to no longer

than ten to fifteen minutes per hour.  He has lost grip strength in his right hand, although his doctor has not prescribed any work restrictions based on this condition.  He testified that his ability to sit is restricted by nerve and circulation problems in his right leg, although no doctor has ever restricted his ability to sit.  According to Polson, he cannot sit for longer than ten or fifteen minutes at a time or for more than a couple of hours a day.  He cannot walk farther than ten to twenty yards without using a cane, and even with a cane, he cannot walk farther than fifty to 100 yards.  He cannot walk over uneven ground.  He testified that the limitations on his walking would prevent him from returning to his supervisor's job because he would not be able to walk around the construction site to make sure things are being done correctly.  He can lift and carry about 100 pounds.  He has applied for a number of jobs, but has not been hired because of his work restrictions.  R. 253.

Before his injury, Polson was in the process of remodeling his kitchen.  He has not been able to complete the project.  He is able to spend one or two hours a day at woodworking because he has modified his shop so he can work sitting down.  He makes bowls, plates, and faces, which he sells, but physically he is unable to work long enough to make a profit.  He has problems driving because he cannot move his right foot to the brake pedal.  Changes in the weather cause pain in his right ankle joint.

Polson uses Advil to treat his pain.  He does not take prescription medicine because of a family history of liver problems, although he has no personal history of liver problems and his doctors have not limited his use of pain medication.  He wears an orthotic in his right shoe so he can straighten out his leg and walk "like a human being."  R. 251.  He has not seen a doctor for any of his impairments since March 2006.  R. 260.

*Medical Records*

There is no dispute that Polson suffered serious injuries to his right foot, ankle, and wrist in the fall that occurred on September 23, 2004, and those injuries resulted in severe impairments. The dispute is over the extent to which Polson's impairments are disabling.

After the fall, Polson's right wrist was placed in a cast. On October 7, 2004, two weeks after the fall, Polson underwent surgery to repair his fractured right heel. Six weeks later, the fracture had healed with "good consolidation," and he was started on therapy. R. 222. On December 16, 2004, Polson's doctor released him to sedentary work, with no walking or climbing of ladders or stairs for four weeks. R. 221. By January 12, 2005, Polson's condition had improved, and his work restrictions were modified to "no lifting greater than 10 pounds, no standing greater than 15 minutes an hour, no walking, no ladders, no stairs." R. 220. Over the ensuing months, Polson continued to progress, and on July 13, 2005, his doctor reported that the range of motion in his wrist was "quite good," and his grip strength was "coming along." R. 214. However, the heel fracture had "gone on to produce significant osteoarthritis of the subtalar joint as well as a lateral wall bony prominence with peroneal tendon subluxation." R. 198.

On September 1, 2005, Polson's care was transferred to Dr. Joseph F. Galles, Jr., an orthopedic surgeon in Des Moines, Iowa. X-rays of Polson's ankle and foot demonstrated

> a flattened calcaneal height and lateral wall blowout of the calcaneus with lateral deviation of the entire calcaneus particularly seen on the standing AP view of both ankles. He has what appears to be obvious lateral impingement of the ankle. He has virtually no joint space left in the subtalar joint.

R. 205. After taking a history, considering the x-rays, and conducting a physical examination, Dr. Galles made the following assessment: "Forty-five-year old with severe posttraumatic arthritis of the subtalar joint after a calcaneus fracture and now also has

lateral ankle impingement." *Id*. Dr. Galles recommended surgery to diminish the pain. *Id*. Polson elected not to have the surgery. Dr. Galles gave Polson the following work restrictions: avoid uneven ground and limit standing and walking to about ten to fifteen minutes per hour.

On February 1, 2006, Dr. Galles wrote a "disability rating" letter to an insurance company. He wrote:

> At this point, I do believe Mr. Polson is at his level of medical maximal improvement. He is not electing to proceed with any surgical intervention at this time. I did offer the possibility of either subtalar arthrodesis with lateral hindfoot debridement or simple lateral hindfoot debridement alone. For now he is getting along reasonably well with his AFO brace. At this point we will keep him at the current restrictions which we will make permanent which are limiting him on his feet to about 10 to 15 minutes per hour and avoid uneven ground.

R. 201.

On March 6, 2006, Polson saw his doctor complaining of persistent pain in his wrists and loss of motion. R. 213. His doctor noted that his grip strength was "down a little bit." X-rays showed "solid healing of his right scaphoid fracture. It is anatomically aligned. Range of motion of his wrists reveals he has lost some volar flexion related to his injury. Grip strength is also mildly diminished." *Id*. The doctor stated "there are no permanent restrictions for his right upper extremity," although he was entitled to a five percent upper extremity impairment because of his right wrist injury. *Id*. From the Record, it appears Polson did not seek medical treatment after that date.

On January 22, 2007, at the request of Polson's attorney, Rick Ostrander, a medical consultant, prepared a "vocational evaluation" of Polson. R. 136-142. Ostrander concluded as follows:

> When an individual such as Perry Polson experiences a significant reduction in employability, that individual can reasonably expect a reduction in earning capacity. This is

> typically as a result of a decreased ability to both find and keep work as well as lower wages generated when successfully employed. Research on the economic impact of a work disability clearly substantiates this. In Mr. Polson's case, he is unable to return to his former employment and is essentially limited to sedentary work. This results in a loss in employability and labor market access of 99% and securing any employment is likely problematic. In fact the only occupation identified, that of a telephone solicitor, has a notoriously high turnover rate and the vast majority of individuals working in this occupation leave within a year. Mr. Polson's vocational profile from interest testing suggests that he has little or no orientation towards social or enterprising occupations and thus it is unlikely that he would be successful in this occupation. Therefore for all practical purposes, Mr. Polson is not employable and has suffered a 100% loss of earning capacity.

R. 142.

### *Vocational Expert's Testimony*

A vocational expert ("VE") testified at the ALJ hearing. The ALJ asked the VE the following hypothetical question:

> Assume with me you're looking at an individual of a younger age because he's under 50. He has an eleventh grade formal education as far as the last grade actually completed. He has a skilled work history. . . . He has medically determinable impairments that cause the same work-related limitations that are described by Mr. Polson in his testimony here today. My question for you is what if anything is the vocational impact of that testimony on his past work or any other work?

R. 268. The VE responded that the hypothetical individual would not be able to return to his past work or perform any other type of work on a regular basis.

The ALJ then asked the VE a second hypothetical question, which included the findings of the state agency:

> Please assume that age, education and work experience is the same as before. . . . This time, what if a person could occasionally lift or carry 20 pounds, frequently 10 pounds, could stand and/or walk with normal breaks for a total of at least 2 hours in an 8 hour workday, sitting with normal breaks for about 6 hours in an eight hour workday, push/pull is unlimited. . . . Postural activities are occasional except no climbing of ladders, ropes or scaffolds. From a manipulative standpoint, they do not limit reaching or feeling. They do limit . . . handling and fingering, so that avoid constant handling/fingering with the right upper extremity. . . . No visual limits, no communicative limits; environmentally, they would avoid concentrated exposures to vibration and to hazardous working conditions. Would such a person in your professional judgment and with a reasonable degree of certainty be able to do Mr. Polson's past work?

R. 269-70. The VE responded that the individual would not be able to perform his past work because he would not have the capacity to be up on his feet long enough, but he would be able to perform several other jobs, such as parking lot attendant and some inspector/packager positions. R. 270.

The ALJ then asked a third hypothetical question based on the medical source statement from Dr. Gallis, which is included on pages 201-206 of the Record:

> A third hypothetical question . . . would ask you to assume an individual limited to being on his feet about 10 to 15 minutes an hour and avoiding [walking on] uneven ground.

R. 270-271. The VE responded that absent any upper extremity limitations, this individual could perform several sedentary occupations. R. 271. The ALJ asked about the individual in the third hypothetical, further limited to frequent or less fingering or feeling, and the VE responded that the person could perform the job of electronics assembler. R. 271-72.

7

## The ALJ's Decision

In his decision, the ALJ found that Polson has not engaged in substantial gainful activity since September 23, 2004, his alleged disability onset date. The ALJ determined that Polson has two severe impairments: post traumatic osteoarthritis of the right ankle and foot, and status post fracture of the right wrist, with solid healing and some decrease of motion and mild decrease in grip strength. The ALJ found that neither of these impairments, singly or in combination, meets the requirements of the Listings.

The ALJ stated he had considered the entire record carefully and had concluded that Polson has the following limitations:

> [H]e cannot perform postural activities on more than an occasional basis; can only stand and/or walk for 10 to 15 minutes per hour; needs to avoid uneven ground; cannot climb ladders, ropes, or scaffolds and should avoid concentrated exposure to hazards or vibration; and is limited to frequent handling and fingering with his right upper extremity, being unable to work with it on a constant basis.

R. 17. The ALJ found that with these limitations, Polson has the residual functional capacity to perform a range of light work. The ALJ stated that in making these findings, he considered all of Polson's symptoms to the extent they reasonably could be accepted as consistent with the objective medical evidence and other evidence in the Record.

The ALJ found that Polson's testimony was exaggerated and not substantially supported by the medical evidence and opinion in the Record, considered in its entirety. R. 18. The ALJ specifically discounted Polson's testimony that he is unable to sit for longer than ten or fifteen minutes at a time, or longer than a couple of hours a day. The ALJ noted that on pain questionnaires and function reports Polson completed in February and March of 2006, Polson noted he "spent most of the day sitting down." R. 19.

Based on these findings, the ALJ ruled that Polson was able to perform the requirements of representative occupations such as parking lot attendant, inspector and

hand packager, jewelry production assembler, and electronics assembler. R. 21. The ALJ found that Polson has not been under a disability, as defined by the Social Security Act, from September 23, 2004, to the date of the ALJ's decision. *Id*.

## *Discussion*

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An

9

impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 708 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L. Ed. 2d 119 (1987); *id.* at 158, 107 S. Ct. at 2300 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon*, *supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant

11

cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *See Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page*, 484 F.3d at 1042 (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion.") (quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1997)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may

support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort, or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1) the claimant's daily activities;
> 2) the duration, frequency and intensity of the pain;
> 3) precipitating and aggravating factors;
> 4) dosage, effectiveness and side effects of medication;
> 5) functional restrictions.

739 F.2d 1320, 1322 (8th Cir. 1984); a*ccord Ramirez v. Barnhart*, 292 F.3d 576, 580-81 (8th Cir. 2002). The court must "defer to the ALJ's determinations regarding the

credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

In the present case, Polson argues the ALJ's decision is not supported by substantial evidence in the Record. Polson points to the ALJ's finding that Polson was not functionally limited in the use of his right hand or fingers due to his history of severed tendons in his right hand as a youngster. *See* R. 19. Polson argues this finding is inconsistent with his testimony, and that his testimony is supported by a notation in Rick Ostrander's report, *see* R. 138. referring to a report of an independent medical examination by Dr. David Archer on October 8, 2006. According to Ostrander, Dr. Archer examined Polson and found some loss of flexion and extension with the right wrist, as well as some loss of grip strength.[*]

The ALJ's findings are not inconsistent with the Record. It appears that no examining or treating doctor has ever found Polson was functionally limited in the use of his right hand or fingers due to his history of severed tendons. In the records of numerous examinations of Polson's right wrist by several medical care providers, no mention is made of such a restriction. On March 6, 2006, the date of Polson's last medical visit, his doctor found no permanent restrictions in Polson's use of his upper right extremity. R. 213. In fact, even Dr. Archer did not make such an assertion – he found a loss of wrist flexion and extension and grip strength, not a loss of function. In his testimony before the ALJ, even Polson did not make such a claim:

>   A.  Beginning when I was 11 or 12, I severed the tendons in my right hand.
>
>   Q.  Is that the injury that caused the Navy to discharge you?
>
>   A.  Yeah.

---

[*]Polson also asserts that "Dr. Archer found (Page. 139) that [Polson] had difficulties with repetitive gripping." Doc. No. 11, p. 7. In fact, this is not a "finding" by Dr. Archer, but a summary of what Polson told Ostrander during a "structured interview" on November 22, 2006. R. 139.

15

> Q. Did they believe that you had difficulties functioning in some –
>
> A. I had – I was a machinist mate, which involved taking apart propeller pumps and such on a ship and the parts were fairly heavy and in schooling, I dropped a part, which led . . . the instructor to discover why I dropped the part and then they realized that I had lied to enlist to get in.
>
> Q. So does your right hand still have some issues in terms of functioning because of that injury?
>
> A. Um-hum.
>
> Q. What kind of functioning?
>
> A. I don't have use of two fingers on my right hand just –
>
> Q. And which two are those?
>
> A. The ring finger and the small finger.
>
> Q. The last two there?
>
> A. Yeah.
>
> Q. And when you clutch your hand, apparently those two don't work too well?
>
> A. No.

R. 242. Polson testified only that two of the fingers on his right hand "don't work too well." *Id.* He did not testify that they limited the functioning of his hand in any significant way. The ALJ's finding that Polson was not functionally limited in the use of his right hand or fingers due to his history of severed tendons in his right hand is supported by substantial evidence in the record.

Polson next takes issue with the ALJ's finding that he is not restricted in sitting. R. 19-20. Polson testified that he cannot sit for longer than ten or fifteen minutes at a time or for more than a couple of hours a day. This testimony is contradicted throughout the Record. In a Personal Pain/Fatigue Questionnaire completed by Polson on August 15,

16

2005, he stated that his ability to sit "depends on being able to elevate [his] foot and change positions of [his] leg." R. 75. In completing the same questionnaire on March 2, 2006, Polson stated, "Sitting isn't really affected other than when I'm idle for too long. Starting to move again I need to limber up again." R. 79. In a Function Report he completed on March 8, 2006, in response to a question about "sitting," he listed no limitations. R. 94, 97. In the records of Polson's visits to various medical care providers, there is no mention of problems with sitting. The ALJ's finding that Polson is not restricted in his ability to sit is supported by substantial evidence in the Record.

The ALJ's finding that Polson is not disabled is supported by substantial evidence in the record. Ultimately, it was Polson's burden to prove disability at step five of the sequential evaluation process, *see Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)), and he has failed to sustain that burden.

Accordingly, the Commissioner's decision is hereby **affirmed**.

**IT IS SO ORDERED.**

**DATED** this 19th day of July, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT